UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **NIMCO Real Estate Assoc., LLC,** ) <br> **Ultima Nashua Indust. Corp.,** & **Anoosh** ) <br> **Irvan Kiamanesh**, ) <br> ) <br>       Plaintiffs ) <br> ) <br>       v. ) <br> ) <br> **Gregory G. Nadeau**, as Administrator of the ) <br> Federal Highway Administration, ) <br> **City of Nashua**, and Various Unnamed ) <br> Officials of the Aforesaid Agencies and ) <br> **New Hampshire Department of Transportation** ) <br> ) <br>       Defendants ) | 1:16-cv-00406-JD |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
### BY DEFENDANT NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION

The Defendant, the State of New Hampshire, Department of Transportation (the "State"), by and through its attorneys, the Office of the Attorney General, and pursuant to Local Rule 7.1(a)(2), hereby submits this Memorandum of Law in support of its Motion to Dismiss the Complaint in this matter.

Plaintiffs have filed a nine (9) Count Complaint (Counts I –IX). The State is expressly named as a Defendant only in Count II. Plaintiffs indicate that they are seeking equitable relief only as it relates to the State's conduct with respect to this Count.[1] The substance of the allegations contained in Count II are that the State failed to provide relocation assistance under

---

[1] However, Plaintiff's allegations are repeated and re-alleged in every subsequent Count and Plaintiffs repeatedly refer to the State as an "agent of the City [of Nashua]." Plaintiffs have not adequately pled any facts sufficient to establish this bald legal conclusion. Absent such allegations, the court should reject this "unsupported conclusions or interpretations of law" that the State was acting as the City's agent. *See Estate of Bennett,* 548 F.3d 155, 162 (1st Cir. 2008). Nevertheless, to the extent that the Court concludes that these passing references to the State are sufficient to allege a claim against the State for Counts I, and III-IX, these Counts must be dismissed against the State for the reasons articulated in this Memorandum of Law.

the RSA 124-A:1, *et seq.*, the Uniform Relocation Assistance and Real Property Acquisition Act (the "URA"), 42 USC §4601, *et seq.*, and further allege that the State violated Part I, Article 1 of the New Hampshire State Constitution.

This Complaint must be dismissed for four reasons. First, any claims against the State arising out of Plaintiffs' Complaint are barred by the doctrine of sovereign immunity. Second, to the extent that the State has waived sovereign immunity, Plaintiffs have failed to exhaust administrative remedies afforded to them and this claim is barred by the applicable statute of limitations. Third, there is no plausible claim in this matter that triggers federal question jurisdiction under either the U.S. Constitution or the URA and therefore this Court should dismiss the federal claims and decline supplemental jurisdiction. Finally, the State is entitled to immunity from suit in this Court pursuant to the Eleventh Amendment of the U.S. Constitution.

## I.      STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court views all "well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Gray v. Evercore Restructuring L.L.C.,* 544 F.3d 320, 324 (1st Cir. 2008). Although a complaint "does not need detailed factual allegations," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007), the court should reject "unsupported conclusions or interpretations of law," *Estate of Bennett,* 548 F.3d 155, 162 (1st Cir. 2008) (quotations omitted), and the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. Put differently, dismissal is appropriate "if the complaint fails to state facts sufficient to establish a claim to relief that is plausible on its face." *Gray*, 544 F.3d at 324 (quotations omitted); *see Estate of Bennett,* 548 F.3d at 162 (to survive dismissal, a complaint "must possess enough heft to set forth a plausible entitlement to relief"

2

(quotations omitted)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Ibqal,* 556 U.S. 662, 678 (2009).

## II.  STATEMENT OF MATERIAL FACTS

The facts recited here are drawn from the Plaintiffs' Complaint and are assumed to be true for the sole purpose of this Motion in light of the above standard of review. The State expressly reserves its right to present contrary evidence and dispute the allegations contained in the Complaint. This recital of facts does not constitute an admission nor a waiver of the State's right to contest any of the same should this matter proceed beyond this stage.

On January 21, 2000, Plaintiffs were first informed that the property located at 1 Pine Street Extension, Nashua, New Hampshire would be acquired by eminent domain in connection with the construction of the "Broad Street Parkway" Project (the "Project"), a federally-funded municipally-managed highway project. Compl. at ¶11. On March 14, 2000, prior to the initiation of negotiations to acquire the subject property, the State sent a letter to Plaintiffs advising them of their eligibility for relocation costs provided that "[a]ll estimates, bids, and other cost data will need prior approval from the State before any reimbursement will be considered." *Id*. at ¶ 15. Subsequently, the Project was placed "on hold," however the State and the City of Nashua agreed to move forward with acquisitions for the Project. *Id.* at ¶17. On March 14, 2002, Plaintiffs received a letter from the State advising them how to apply for and receive advanced relocation benefits and a State employee made an initial visit to the subject property. *Id.* at ¶18-19. Various State officials met with Plaintiffs to discuss the factors necessary for a move, the availability of relocation benefits and the initial offer of $870,000 as just compensation for the

eminent domain acquisition. *Id.* at ¶21. As for relocation costs, Plaintiffs obtained bids of several million dollars and forwarded the bids to the State. *Id.* at ¶ 22.

In May 2003, the State sent a Notice of Offer in the amount of $1,210,000, plus interest, as just compensation for the acquisition in connection with the Project. *Id.* at ¶ 26-27.  By way of background, this Notice of Offer is a statutory prerequisite to initiating a condemnation under New Hampshire law, RSA 498-A:4, III, as it establishes a minimum 30-day quiet period before the condemnor may take title to the property.  On or about June 20, 2003, Plaintiff was notified that the State filed a Declaration of Taking with the Board of Tax and Land Appeals, thereby transferring title to the subject property to the condemnor by operation of law, RSA 498-A:5. *Id.* at ¶ 34.  Plaintiff NIMCO received a check in the amount of $1,210,138.76 as just compensation for the acquisition on or about July 7, 2003. Compl. at ¶ 37.

On or about September 30, 2003, the Plaintiffs received a letter from the State advising them that they qualified as a displaced business, and were "eligible" for certain relocation benefits under the URA. *Id.* at ¶ 39.  By way of background, this so-called "ninety (90) day notice" was sent pursuant to 49 CFR 24.203 (c).  According to the complaint, the subject property was owned by the City and from 2004 to 2010, the premises were leased to Plaintiffs while the Project was being re-designed and reconfigured. *Id.* at ¶ 22, 63-65.  On April 26, 2010, Plaintiffs were notified by the City that due to the reconfiguration of the Project, their property would not be impacted as originally anticipated and, as such, they were no longer required to relocate from the property. *Id.* at ¶ 64.  On August 2, 2010, the State's relocation advisor notified Plaintiffs that relocation funds were no longer available to them as a result of the reconfiguration. *Id.* at ¶ 65.  Plaintiff was simultaneously provided notice of their potential remedies, including their right to appeal to the Commmissioner of the New Hampshire Department of Transportation,

4

by providing a copy of the applicable URA regulations, 49 C.F.R. § 24. (See 49 C.F.R. § 24.10 "Appeals"). Compl. at ¶ 67. According to the Complaint, Plaintiffs' next and final contact with the State was five (5) years later on July 14, 2015, in which they sent a letter "stressing the critical importance and need of the relocation assistance funds." Compl. at ¶ 72.

On September 12, 2014, the City of Nashua offered to sell the subject property back to Plaintiffs at the original purchase price of $1,210,000. *Id*. at ¶ 68. Plaintiffs stated they were unable to purchase the property. *Id*. at ¶ 69. Subsequently, Plaintiffs were asked to execute a lease agreement with the City of Nashua and Plaintiffs were unable to do so. *Id*. at ¶ 71. The City initiated eviction proceedings against Plaintiffs which resulted in the New Hampshire Circuit Court, 9th Circuit, District Division of Nashua to issue a Writ of Possession on July 20, 2016. *Id*. at ¶ 76-78. There are no factual allegations that the State was in anyway involved in the eviction proceedings.

### III. ARGUMENT

**1. Plaintiffs' Claims Against the State are Barred by Sovereign Immunity and the Applicable Statute of Limitations.**

The State is expressly named as a Defendant only in Count II, which alleges violations under the Uniform Act, the State law equivalent, RSA 124-A:1, *et seq*, and a violation of Part 1, Article 1 of the New Hampshire Constitution.[2] For the following reasons, Plaintiff's claims against the State are barred and should be dismissed.

"The doctrine of sovereign immunity… is hereby adopted as the law of the state." RSA 99-D:1. Sovereign immunity is a bar to suit except where specifically abrogated by statute. *Tilton v. Dougherty*, 126 N.H. 294, 298 (1985). The United States Congress may

---

[2] Additionally, to the extent that any other Counts are construed to name the State as a Defendant, the State is entitled to dismissal for the reasons set forth herein.

abrogate a State's immunity by express legislation pursuant to its *Fourteenth Amendment* powers, *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 339 (1st Cir. 2011), or a State may waive immunity by "<u>unequivocally</u> expressing its consent to suit." *Id*. at 340 (1st Cir. 2011) (emphasis added). There is no Federal or State statute that "unequivocally" waives New Hampshire's sovereign immunity with respect to any of Plaintiffs' allegations against the State and therefore must be dismissed.

Even if sovereign immunity has arguably been waived by statute, any such waiver with respect to relocation assistance claims is extremely limited. To be sure, neither the URA nor RSA 124-A, *et seq*. creates a private right of action against the State in either state or federal courts. See RSA 124-A:9 (granting the NH DOT Commissioner jurisdiction in disputes over relocation assistance); *Delancey v. City of Austin*, 570 F.3d 590 (2009) (holding that URA does not create a private right of action).

The State's statute establishing policies for relocation assistance are set forth in RSA 124-A, *et seq*. The legislature provided that "any displaced person who is aggrieved by a program or project that is under the authority of a state agency <u>may have his application reviewed by such state agency</u>." RSA 124-A:9 (c).

The applicable administrative rule, NH Admin R. Tra 503.02 (a), clearly provides:

> Any person who believes that the department has failed to properly determine his or her eligibility for relocation assistance services or the amount of a relocation payment <u>may appeal the determination to the commissioner</u>. (emphasis added).

The State's Right of Way Manual, which has been adopted and approved by the Federal Highway Administration pursuant to 23 C.F.R. § 710.201, provides:

> "any aggrieved person may file a written appeal with the Agency in any case in which the person believes that the Agency has failed to properly consider the person's application for assistance under this part… the displacee <u>has 90 days to appeal in writing to the Commissioner of the Department of Transportation</u>."

6

N.H. Dept. of Trans. ROW Manual § 6.05 (emphasis added).  This is consistent with federal policy established by the URA. 42 U.S.C. § 4633 (b) (3) (that any aggrieved person may have his application reviewed….in the case of a program or project receiving Federal financial assistance, by the State agency having authority over such program or project."); 24 C.F.R. § 24.10 (b) ("Any aggrieved person may file a written appeal with the Agency in any case in which the person believes that the Agency has failed to properly consider the person's application for assistance under this part.")

Therefore, to the extent that sovereign immunity has been waived at all, this Court lacks jurisdiction since neither Congress nor the State has abrogated sovereign immunity by consenting to suit in any court for claims relating to relocation assistance.  Rather, the New Hampshire Department of Transportation has original and exclusive jurisdiction with respect to any disputes over the eligibility for and amount of relocation assistance.  *See* 42 U.S.C. § 4633 (b) (3); NH Admin R. Tra 503.02 (a), (b).  Appeals must be made to the Department of Transportation for a hearing pursuant to NH Admin. R. Tra 200, *et seq*. NH Admin R. Tra 503.02 (b).  From there, appeals may be taken to the Transportation Appeals Board, and beyond that to the New Hampshire Supreme Court. *See* RSA 21-L:14; RSA 541:6. Aside from jurisdictional limitations that bar this suit, Plaintiffs have failed to allege that it timely filed an appeal to the Commissioner within ninety (90) days of the denial of relocation assistance or otherwise exhausted its administrative remedies. N.H. Dept. of Trans. ROW Manual § 6.05.

The Department of Transportation's relocation advisor,  John "Chip" Johnson, unequivocally informed Plaintiffs that they were no longer eligible for relocation costs on or about August 2, 2010. Compl. at ¶ 16, 65. This is insufficient to establish that the Department had finally decided this issue.  Plaintiffs do not allege (nor can they allege) in their complaint

7

that the Commissioner of NHDOT had issued a decision on their eligibility for relocation costs. Furthermore, the instant Complaint filed over six (6) years after the denial of relocation costs is well beyond the ninety (90) day timeframe for requesting a hearing, therefore dismissal of this claim is appropriate.

Similarly, Plaintiff's constitutional claims against the State (under both the US Constitution and the NH Constitution) cannot survive in light of the applicable statute of limitations. When alleging a constitutional claim for relief, federal courts ordinarily borrow "the forum state's limitation period governing personal injury causes of action." *Nieves v. McSweeney*, 241 F.3d 46, 50 (1st Cir. Mass. 2001) (holding that constitutional claims brought under Section 1983 do not contain a built-in statute of limitations); *See Harrington v. City of Nashua*, 2009 DNH 89 (D.N.H. 2009) (Barbadoro, J.) (Applying New Hampshire's 3-year statute of limitations to constitutional claims brought under Section 1983). Generally, personal injury claims against the State must be "brought within 3 years of the date of the alleged bodily injury, personal injury or property damage." RSA 541-B:14. As previously stated, any claim for relief that Plaintiffs may have had against the State accrued on or about the date that it denied relocation assistance on August 2, 2010. Compl. at ¶65. Therefore, any constitutional claims against the State are therefore barred as this suit was filed more than six years after this triggering act.

**2. Even if Plaintiffs' claims are not barred, this Court Lacks Federal Question Jurisdiction.**

 *(a) The URA does not create a federal private cause of action.*

The U.S. Supreme Court has long held that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "The question

whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors v. Lewis*, 444 U.S. 11, 15 (U.S. 1979).  The URA does not expressly create a private right of action. *See* 42 U.S.C. § 4601, *et seq*. Absent express statutory language authorizing suit, in order for a statute giving rise to an implied right of action it must be stated in "clear and unambiguous terms." G*onzaga Univ. v. Doe*, 536 U.S. 273, 290 (U.S. 2002). The statute itself must manifest "an intent to create not just a private right but also a private remedy." *Id*. at 284. Conversely, "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (U.S. 2001) (internal quotes omitted).

Since the U.S. Supreme Court's holding in *Gonzaga*, courts which have considered the question of whether the URA creates an implied private right of action have all answered in the negative. *See Delancey v. City of Austin,* 570 F.3d 590 (5th Cir. 2009); *Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861 (E.D. Va. 2012); but see *Pou Pacheco v. Soler Aquino*, 833 F.2d 392 (1st Cir. 1987) (decided prior to *Gonzaga*). Applying the factors set forth in *Gonzaga*, this Court should in adopt the holdings in *Delancey* and *Clear Sky* and conclude that the URA does not authorize a private cause of action.

First, the provisions of Subchapter III of the URA expressly "create[s] no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." 42 USC § 4602 (a). Thus to the extent Plaintiffs complaint allege that the State violated any provisions contained in subchapter III of the URA, Congress has expressly stated that no private right of action can be had. The relocation assistance provisions at issue here are contained in subchapter II of the URA. 42 USC 4621, *et seq*.  As previously stated, Congress

provided for people aggrieved in connection with the amount or eligibility for relocation assistance, the URA merely requires "the head of the lead agency… to issue such regulations and establish such procedures as he may determine to be necessary to assure…(3) that any aggrieved person may have his application reviewed by…in the case of a program or project receiving Federal financial assistance, by the State agency having authority over such program or project." 42 USC § 4633 (b).   If Congress intended to create a private right of action, it would have said so. Instead it delegated dispute resolution to the head of the lead agency, here, the Commissioner of the Department of Transportation.

     Additionally, the URA does not contain any express language which confers enforcement rights to private citizens.  Rather, similar to the FERPA statute at issue in *Gonzaga*, the URA's relocation assistance provisions, 42 U.S.C. § 4622-25, are "directed at the head of the displacing agency rather than at the individuals benefitted by the statute." *Delancey,* 570 F.3d at 595. Specifically, 42 USC § 4622 (a) pertaining to moving and related expenses, which is the central allegation in Plaintiff's complaint, is directed to "the head of the displacing agency" and does not vest any right of action in the displaced person.  The URA "establishes a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4621 (b). The intent of Congress in enacting the URA is clear: it merely established policies and practices for acquiring agencies to follow on federally-funded projects, and did not intend to create a right of action by the owners of property.

     In order to receive federal funding for a highway project, the displacing agency must provide "satisfactory assurances" that it will comply with the URA. 42 USC § 4630.  "In legislation enacted pursuant to the spending power [of Congress], the typical remedy for state

noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (U.S. 2002). In this respect, by conditioning the receipt of federal funding on compliance with the URA, it is no different than the FERPA statute construed in *Gonzaga* in that, again, it vests the Federal Government, not a private citizen, with the right to hold the acquiring agency accountable for any violations.

Finally, even if the URA permitted a private right of action, the pleading fails because Plaintiffs did not exhaust administrative remedies available to them. *See Pou Pacheco v. Soler Aquino*, 833 F.2d 392 (1st Cir. 1987). The State's position is that *Pou Pochecho* is no longer valid law in this Circuit in light of the U.S. Supreme Court's decision in *Gonzaga*. However, even if it still is valid law, the State is still entitled to dismissal. *Pou Pochecho* holds that in order to challenge the eligibility for URA costs, Plaintiffs must first allege that they exhausted administrative remedies by receiving a final agency decision as a condition precedent before seeking enforcement in the federal courts. *Id*. at 401-02. There was no such final agency decision that can be alleged in this matter. Mr. Johnson, as the State's relocation adviser, notified Plaintiffs that they were no longer eligible for relocation assistance. This allegation, by itself, is insufficient to establish that a final decision had been made by the State on the subject. Plaintiffs failed to allege that there was a final decision made by either the Commissioner of the Department of Transportation or the Transportation Appeals Board. Plaintiffs failure to file a claim with the Commissioner of the New Hampshire Department of Transportation within 90 days of being denied relocation costs, pursuant to RSA 124-A:9 (c), NH Admin R. Tra 503.02 (a), 24 CFR § 24.10 (b) and N.H. Dept. of Trans. ROW Manual § 6.05 is fatal to their claim for relief.

11

*(b) Count III, alleging a claim under the Fifth Amendment of the US Constitution, must be dismissed against the State.*

Plaintiffs do not expressly name the State as a Defendant in Count III of the Complaint, which alleges violations under the "takings clause" of the 5th Amendment to the U.S. Constitution. Count III fails to state a plausible claim for relief against the State because Plaintiff has not adequately pled sufficient factual allegations that would plausibly give rise to a cause of action against the State. Nevertheless, even if the complaint were to be construed as a claim against the State, it fails.

Under the takings clause of the 5th Amendment, there is no constitutional right for relocation costs. It is a "settled rule against allowance for consequential losses" under the U.S. Constitution. *United States v. Westinghouse Electric & Mfg. Co*., 339 U.S. 261, 264 (U.S. 1950). "When there is an entire taking of a condemnee's property, whether that property represents the interest in a leasehold or a fee, <u>the expenses of removal or of relocation are not to be included in valuing what is taken</u>." *Id*.

Furthermore, "[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (U.S. 1985); See also *Liberty Mut. Ins. Co. v. Brown*, 380 F.3d 793, 796 (5th Cir. 2004) (holding that **"**a takings claim against a state was not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision," and (2) the plaintiff "seeks compensation through the procedures the State has provided for doing so.")

According to the Complaint, on or about July 7, 2003, the State, acting on behalf of the City, provided $1,210,000 as just compensation for the acquisition in connection with the

Project. *Compl.* at ¶ 26-37. Based upon facts that are publicly available in pleadings filed at the New Hampshire Board of Tax and Land Appeals, Plaintiffs did not contest the adequacy of the just compensation in the condemnation proceeding. Docket marking agreements were filed shortly after the Declaration of Take was filed and there was no subsequent litigation contesting just compensation. The State's eminent domain procedures, set forth in RSA 498-A, provide for a just compensation hearing before the Board of Tax and Land Appeals in the first instance. RSA 498-A:25. A decision from that Board can be appealed *de novo* to the applicable County Superior Court and eventually to the State Supreme Court. RSA 498-A:27, 28. Plaintiffs have waived any right to challenge the adequacy of the just compensation in connection with this taking by failing to pursue remedies provided under RSA 498-A when the property was condemned over thirteen (13) years ago.

**3. The Eleventh Amendment Bars Plaintiffs' Claims Against the State in Federal Court.**

Even if this Court finds that the State may have waived its immunity on a limited basis by permitting grievances to be filed with the Commissioner of NHDOT, this limited waiver cannot be read as a consent to jurisdiction in the federal courts. The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commented or prosecuted against one of the United States by citizens of another state…" U.S. Const. Amend. XI. "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 339 (1st Cir. 2011); but see *Pou Pacheco v. Soler Aquino*, 833 F.2d 392, 401 (1st Cir. 1987) (decided prior to G*onzaga Univ. v. Doe*, 536 U.S. 273 (U.S. 2002). As previously stated, pursuant to RSA chapter 99-D, New Hampshire has retained sovereign immunity except to the extent limited by the state legislature. While the state legislature has—

under certain limited circumstances—waived the State's sovereign immunity in state court or (as here) in its own State agencies, "New Hampshire's waiver of immunity in its own courts does not waive its Eleventh Amendment immunity to suit in federal court." *Roderick v. New Hampshire Hosp.*, 2000 U.S. Dist. LEXIS 1143, *41–43 (D.N.H. 2000) (explaining that New Hampshire's limited statutory waivers of sovereign immunity for certain tort and contract claims are restricted to New Hampshire courts).

Additionally, even if this Court were to retain jurisdiction under 28 USC § 1331 with respect to claims brought by Plaintiffs against any of the *other* named defendants:

> The Eleventh Amendment forecloses . . . the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the state . . . neither pendant jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985).

The federal court's ability to exercise supplemental jurisdiction under 28 USC § 1367 does not provide a basis for federal court jurisdiction against a nonconsenting State. *See Raygor v. Regents of University of Minn.*, 534 U.S. 533, 542 (2002) ("We hold that § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants.")

## IV. CONCLUSION

This Court should dismiss the Plaintiffs Counts against the State as the claims are barred by sovereign immunity and are both procedurally and time barred. Even drawing all reasonable inferences in the Plaintiffs' favor, this Court should find that the Plaintiff failed to state a claim against the State and grant the State's Motion to Dismiss and thus terminate the State as a party in this matter.

WHEREFORE, this Defendant respectfully requests that this Honorable Court:

A. Grant the Defendant's Motion to Dismiss with regard to New Hampshire Department of Transportation as a Defendant; and

B. Grant any additional relief that is just and proper.

Respectfully submitted,

NEW HAMPSHIRE
DEPARTMENT OF TRANSPORTATION

By its attorney,

Joseph A. Foster
Attorney General

Date: November 1, 2016                /s/ Matthew T. Broadhead
Matthew T. Broadhead
NH Bar. No. 19808
Assistant Attorney General
New Hampshire Department of Justice
33 Capitol St.
Concord, NH  03301
Tel. (603) 271-3675
Fax (603) 271-2110
Matthew.Broadhead@doj.nh.gov

**Certificate of Service**

I certify that, on the above date, a copy of the foregoing will be sent electronically to counsel of record for all parties who are registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Matthew T. Broadhead