UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

NIMCO Real Estate
Associates, LLC, et al.

   v.                                        Civil No. 16-cv-406-JD
                                          Opinion No. 2017 DNH 058
Gregory G. Nadeau, as
Administrator of the Federal
Highway Administration, et al.


O R D E R


NIMCO Real Estate Associates, LLC; Ultima Nashua Equipment
Corporation; and Anoosh Irvan Kiamanesh brought suit against
Gregory G. Nadeau, the administrator of the Federal Highway
Administration ("FHWA") the City of Nashua, and the New
Hampshire Department of Transportation ("NHDOT"), alleging
claims that arose from the acquisition of the plaintiffs'
property by eminent domain for a highway project.  The FHWA
moves to dismiss the claim against it on the ground that the
court lacks subject matter jurisdiction.[1]  The NHDOT and the City
of Nashua move to dismiss the claims against them and join in
the motion to dismiss filed by the FHWA.  The plaintiffs object,
to the motions to dismiss and move for a preliminary injunction.[2]

---

[1] Nadeau is sued in his official capacity as the administrator
of the FHWA, making the FHWA the defendant.

[2] Although the FHWA indicated its intent to file a reply, none
was filed.

Standard of Review

In considering motions under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the court credits a plaintiff's properly pleaded allegations and draws all reasonable inferences in the plaintiff's favor.[3] Reddy v. Foster, 845 F.3d 493, 497 (1st Cir. 2017); Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016). Properly pleaded allegations are factual allegations not conclusory legal allegations. Guadalupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016). To avoid dismissal under Rule 12(b)(6), the properly pleaded facts, with appropriate inferences, must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When subject matter jurisdiction is challenged, "[t]he parties asserting jurisdiction, here the plaintiffs, have the burden of demonstrating the existence of federal

---

[3] For purposes of a motion under Rule 12(b)(1), the court may also consider other materials and evidence in the record "whether or not the facts therein are consistent with those alleged in the complaint."[3] Id.; see also Torres-Negron v. J&N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007).
In this case, the FHWA submitted a declaration in support of its motion, which the plaintiffs moved to strike. Because the declaration did not show the declarant's personal knowledge of the matters stated, it was struck. No other evidence was submitted in support of or opposition to the motion to dismiss.

jurisdiction."  Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 20 (1st Cir. 2013).

<u>Background</u>

Ultima is a company that manufactures specialty machines, equipment, and parts and has operated at its place of business at 1 Pine Street Extension, Nashua, New Hampshire, since 1958. NIMCO is a real estate limited liability company that owns the property at 1 Pine Street where Ultima is located.  Anoosh Kiamanesh is the manager of Nimco, the president and sole director of Ultima, and the majority owner of both NIMCO and Ultima.

In early 2000, the City of Nashua and NHDOT were planning a highway project, called the Broad Street Parkway.  Officials of the NHDOT and the city met, and Mike Rousseau, a representative of NIMCO, Ultima, and Kiamanesh was also at the meeting.  The city and state officials told Rousseau that NIMCO's property at 1 Pine Street was needed for the project, which would require acquisition of the property and relocation of NIMCO and Ultima.

At that time, the city and NHDOT expected to make an offer for the Pine Street property in September of 2000 and anticipated that plans for a new site for Ultima and NIMCO would be complete by the spring of 2002.  Construction on the segment

3

of the parkway that required the 1 Pine Street property was to
begin in the fall of 2002.

Ultima has hundreds of pieces of manufacturing equipment
and machinery at the property with an estimated value of $12
million.  Some of the pieces of equipment and machinery are
large and heavy, making them difficult to move, and some require
special foundations and service connections.

The plaintiffs (NIMCO, Ultima, and Kiamanesh) requested
relocation assistance and benefits under the Uniform Relocation
Assistance and Real Property Acquisition Policies Act of 1970,
42 U.S.C. § 4601, et seq., ("URA").  In a letter dated March 14,
2000, Jeanne A. Grover, Chief Relocation Advisor at NHDOT told
the plaintiffs that NHDOT would grant advanced relocation
benefits with certain conditions.[4]  Thereafter, when the
plaintiffs inquired about relocation benefits in 2000 and 2001,
they were told that the project was on hold.

The project began to move forward again in March of 2002.
The plaintiffs received a letter from NHDOT about the process
for applying for advanced relocation benefits.  The NHDOT
offered $870,000 to acquire the property.  The plaintiffs

---

[4] Although not defined in the complaint, "advanced relocation
benefits" appear to be benefits paid before the relocation has
occurred.

obtained moving bids of several million dollars each, because of the nature of the machinery and equipment.

The plaintiffs found a property that would be suitable and available for relocation, which was to be auctioned on May 2, 2003.  Alan Rau, the plaintiffs' relocation manager, notified the NHDOT of the auction on April 25, 2003, emphasizing that it was imperative that the relocation funds be available to move the plaintiffs to the new location and asked that the relocation funding be expedited.

On May 2, 2003, Kiamanesh attended the auction and successfully bid on the property for the price of $3,275,000. He put a deposit of $100,000 on the property.  The plaintiffs notified the NHDOT of their winning bid and that they needed the eminent domain compensation award and relocation benefits by June 21, 2003, to close on the new property.  Also in May of 2003, the NHDOT increased the acquisition offer to $1,210,000, although no payment was made.

The plaintiffs defaulted on the purchase of the new property on June 21, 2003, and lost their deposit of $100,000. The plaintiffs received $1,210,138.76 from the Board of Land and Tax Appeals on July 7, 2003.

Another auction was scheduled on the property the plaintiffs had defaulted on, which was held on August 14, 2003.

5

The plaintiffs again placed the winning bid of $3,260,000 for the property, and again gave a deposit in the amount of $100,000.  Although the plaintiffs received a letter in September that they qualified for relocation funds, no payment was made at that time.  On October 3, 2003, the plaintiffs again defaulted on the purchase of the new property and again lost the $100,000 deposit.  The plaintiffs did not receive relocation assistance.

From 2004 through 2008, the plaintiffs looked for property for relocation.  Beginning in 2005 and through 2010, Rau, on behalf of the plaintiffs, signed leases for the 1 Pine Street property.  The leases identified the owner of the property as NHDOT.  Under the leases, the plaintiffs were required to pay Nashua the amount of real estate taxes on the property.  The leases also included a provision that released the landlord, its agents and assigns, from liability for claims related to the taking of the property and construction and maintenance of the highway project.

In 2006, Ultima was in financial difficulty and signed a contract with Kia Technologies Corporation, a Canadian corporation, through which Ultima agreed to sell its machinery and equipment to Kia.  Kiamanesh is a stockholder in Kia.  Ultima, with Kia, entered into contracts with companies in China

to use the equipment and machinery and to deliver the equipment and machinery to the companies in China.  On September 27, 2009, a representative of the Chinese companies came to Ultima to inspect the machinery and equipment.

The next day, September 28, 2009, Kiamanesh met with the Economic Director of Nashua and the manager of the highway project to tell them about the venture with the Chinese companies and the need for money to ship the equipment and machinery to China.  No relocation funds were provided.

On December 18, 2009, Rau, on behalf of the plaintiffs, sent a letter to the NHDOT Right of Way Agent requesting relocation assistance and benefits.  When Rau followed up the letter with a phone call in early January, 2010, he was told that Nashua was revising the highway project and might not need the 1 Pine St. property.

Nashua's Director of Public Works notified the plaintiffs on April 26, 2010, that the 1 Pine Street property was no longer needed for the highway project.  As a result, the plaintiffs were no longer required to move.  The NHDOT agent also notified the plaintiffs on August 2, 2010, that the property was no longer needed and that relocation funds were not available.  On September 12, 2014, the plaintiffs received a letter from Nashua offering the property for sale at a price of $1,210,000.

7

Kiamanesh responded that he was not able to buy back the property.  Nashua then told the plaintiffs that it was preparing to sell the property and that Ultima would have to enter into a lease agreement.  The draft lease sent by Nashua in June of 2015 required rent of $8,800 per month.  The plaintiffs were unable to pay the rent in the lease.

In July of 2015, Kiamanesh again requested relocation assistance funds.  On August 6, 2015, Nashua sent the plaintiffs an eviction notice and a notice to quit before November 6, 2015. The plaintiffs remained on the property.

In May of 2016, Nashua filed an action against Ultima in Hillsborough County Superior Court, seeking the unpaid real estate taxes through 2015.  Nashua also sent a notice to vacate, and brought a landlord and tenant writ against the plaintiffs.

The plaintiffs filed suit on September 9, 2016, alleging nine claims against the FHWA, the City of Nashua, and "various unnamed officials of the aforesaid agencies, and of the NHDOT." The plaintiffs have not clarified which, if any officials, are defendants in this case.

Count I is brought against the FHWA "and/or its Officials for failing or neglecting to undertake its responsibilities under the [URA] and regulations thereunder."  Count II is brought against the NHDOT "and its officials as they are and

have acted as Agents for the City" with respect to relocation benefits under the URA, which is incorporated into state eminent domain proceedings by RSA 124-A:13.  Count III, against Nashua, alleges that Nashua has taken the plaintiffs' property by failing to provide relocation assistance and benefits under the URA in violation of the Fifth Amendment.  Count IV seeks to reopen the original taking of the property and seeks additional eminent domain damages.  Count V claims that Nashua violated the equal protection clause of the Fourteenth Amendment by providing URA relocation assistance and benefits to other businesses but not to the plaintiffs.  Count VI is a claim against Nashua under 42 U.S.C. § 1983, alleging violations of the URA, the Takings Clause of the Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment.  In Count VII, the plaintiffs seek an award of attorneys' fees and litigation expenses under the URA.  Count VIII alleges "municipal estoppel" against Nashua, and Count IX alleges unjust enrichment against Nashua.

## Discussion

The FHWA, the NHDOT, and Nashua have each moved to dismiss the claims against them.  The NHDOT and Nashua have also joined in the FHWA's motion.  The plaintiffs object to the motions to dismiss.  NHDOT moved to dismiss Nashua's cross claims against it.  Nashua did not respond to the motion to dismiss.

9

I.   <u>NHDOT's Motion to Dismiss Nashua's Cross Claims</u>

Nashua brings cross claims against NHDOT alleging that NHDOT was negligent in failing to collect rent from the plaintiffs (Claim I), that NHDOT breached "agency agreements" with Nashua (Claim II), and that NHDOT is "obligated to indemnify the City" (Claim III).  NHDOT moves to dismiss the claims on the grounds that they are barred by the statute of limitations, are barred by sovereign immunity and the Eleventh Amendment, and Claim III fails to allege an actionable claim. As is noted above, Nashua did not respond to the NHDOT's motion to dismiss the cross-claims.[5]

A.   <u>Statute of Limitations</u>

RSA 508:4 provides the applicable limitations period for Nashua's claims against the NHDOT.  Under the statute, the claims must be brought within three years "of the act or omission complained of."

Nashua alleges that it worked with the NHDOT on the highway project beginning in 1996 and that the NHDOT signed the declaration of taking, pertaining to the plaintiffs' property,

---

[5] As a result, Nashua has waived its arguments in support of the cross claims.  <u>Vallejo v. Santini-Pantini</u>, 607 F.3d 1, 7 (1st Cir. 2010).

on behalf of Nashua in 2003.  Nashua further alleges that under an agreement dated January 5, 2009, NHDOT and Nashua agreed that NHDOT would continue to manage the acquisition of property for the highway project.  Sometime in 2010, Nashua decided it would not need the plaintiffs' property for the highway project.

Nashua contends that after the plaintiffs' property was acquired by Nashua, in 2003, the NHDOT did not charge the plaintiffs a fair market rent for the property through the lease term ending on June 30, 2011.  Nashua also alleges that if the plaintiffs succeed on their claims against Nashua, "NHDOT's breach of its duty to the City caused the damages incurred by Plaintiffs."

The events alleged by Nashua to support its claims began in 1996 and appear to end in 2011.  As such, the negligence claim and breach of contract claim, to the extent facts exist to support either claim, arose more than three years before the suit in this case was filed in 2016.  Therefore, the negligence claim and breach of contract claim are dismissed as untimely.

B.   Immunity

Nashua brings its claims against the NHDOT only, not officials of the NHDOT.  "As a general matter, states are immune under the Eleventh Amendment from private suit in federal courts, absent their consent."  Wojcik v. Mass. St. Lottery

11

Comm'n, 300 F.3d 92, 99 (1st Cir. 2002).  For purposes of the
Eleventh Amendment, state agencies, such as the NHDOT, are
entitled to immunity under the Eleventh Amendment.  Pennhurst
St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

No exception to Eleventh Amendment immunity is apparent in
this case.  Therefore, Nashua's claims are also barred by
immunity.

> ### C.  Indemnification

The indemnification claim also fails on the merits. Nashua
provides no facts to support its indemnification claim.  It
states only that "[t]o the extent Plaintiffs recover any amount
against the City, NHDOT is obligated to indemnify the City."  As
such, Nashua has failed to state a claim on which relief may be
granted.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) ("A
pleading that offers labels and conclusions or a formulaic
recitation of the elements of a cause of action will not do.
Nor does a complaint suffice if it tenders naked assertions
devoid of further factual enhancement." (internal quotation
marks and citations omitted)).

> ## II.  Sovereign Immunity

The NHDOT and Nashua raise sovereign immunity in support of
their motions to dismiss the plaintiffs' claims.  Nashua simply

adopted NHDOT's argument in support of sovereign immunity
without, apparently, realizing that the doctrine applies
differently to the state and to municipalities.  See Mt. Healthy
City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977);
Perfetto v. Plumpton, 2016 WL 3647852, at *3 (D.N.H. July 1,
2016); Maryea v. Velardi, 168 N.H. 633, 635-39 (2016); Farrelly
v. City of Concord, 168 N.H. 430, 439-44 (2015).  In addition,
neither the NHDOT nor Nashua recognized that the plaintiffs'
claims are also brought against "unnamed" officials of the NHDOT
and the city.[6]  To the extent NHDOT relies on the administrative
process provided by RSA chapter 124-A, it may assert a failure
to exhaust administrative remedies rather than sovereign
immunity.

     Therefore, neither the NHDOT nor Nashua has shown that
sovereign immunity bars the plaintiffs' claims.

III.  Prior-Pending Claim

     Nashua asserts that the plaintiffs' claims against it are
barred by a "prior-pending claim."  In support, Nashua
represents, without providing any filings or other information
about the nature of the "prior-pending claim," that the claim is

---

     [6] In their objections, the plaintiffs pointed out the
misunderstandings of the NHDOT and Nashua with respect to
sovereign immunity but neither defendant filed a reply.

in regard to "taxes and other monies owed due to Plaintiff
Ultima's possession and occupancy of the subject property."
Nashua also represents that Ultima has raised a defense based on
the URA in that case and that Nashua "should not be forced to
litigate the same claims based on the same facts with the same
party(ies) at the same time in two different courts."

Nashua apparently intended to rely on the discretionary
prior-pending action doctrine, rather than a defense based on a
prior-pending claim.  See Quality One Wireless, LLC v. Goldie
Gr., LLC, 37 F. Supp. 3d 536, 540-42 (D. Mass. 2014).  Under the
prior-pending action doctrine, good grounds exist to stay or
dismiss a case when another action is pending "'between the same
parties, predicated upon the same cause of action and growing
out of the same transaction, and in which identical relief is
sought.'"  Jones v. Revenue Assistance Program, 2016 WL 3919843,
at *3 (D. Mass. July 14, 2016) (quoting Quality One, at 540-41).

The prior-pending action doctrine permits a court to abate
a later suit "to ensure judicial efficiency and [to] avoid
inconsistent judgments."  Jones, 2016 WL 3919843, at *3.  The
doctrine is discretionary, however, depending on the
circumstances.  Quality One, 37 F. Supp. 3d at 541-42.  Whether
or not the doctrine would apply in this case cannot be decided,

14

however, because Nashua did not sufficiently support its theory to permit review.

IV.   The URA

The FHWA moves to dismiss Count I for lack of subject matter jurisdiction.  The FHWA contends that no private right of action exists under the URA, which precludes the court's subject matter jurisdiction to consider the claim against it.  NHDOT and Nashua also move to dismiss the URA claims against them.

A.   Claims That Implicate the URA

The plaintiffs' only claim against the FHWA is alleged in Count I.  Count I is captioned:  "Declaratory and Injunctive v. FHWA and/or its Officials for failing or neglecting to undertake its responsibilities under the Uniform Act and regulations thereunder."  In support of Count I, the plaintiffs allege that the FHWA had a duty "to ensure that public projects for which federal funds are expended meet the essential purposes of the cited laws and regulations to treat persons and companies whose property is taken fairly and consistent [sic] with their constitutional rights."  Compl., Doc. 1, ¶ 85.  They further allege that the FHWA failed and neglected to carry out its duties under the URA.  They ask the court to order the FHWA to require the NHDOT and the City of Nashua to "cease all efforts

to evict, displace or claim money damages from the Plaintiffs,
under the Purported Lease or otherwise, and provide Plaintiff
[sic] proper relocation benefits post haste . . . ."  Id. ¶ 90.

In Count II against the NHDOT, the plaintiffs allege that
the NHDOT and its officials as agents for Nashua were required
under the URA "to ensure that Plaintiffs were treated fairly,
that all federal and state laws and regulations were followed,
and that Plaintiffs be provided proper relocation assistance."
Id. at ¶ 97.  The plaintiffs seek the same relief as alleged in
Count I and also ask that Nashua be required to pay damages.
The URA is also a basis for the plaintiffs' Fifth Amendment
takings claim in Count III, the civil rights claim in Count VI,
and the demand for fees and expenses in Count VII.

B.  Private Right of Action Under the URA

It is undisputed that the URA does not expressly provide a
private right of action.  The plaintiffs argue, nevertheless,
that they are entitled to assistance and benefits under § 4622
and § 4630 as "displaced persons."  They urge the court to find
that § 4622 and § 4630, when read together, imply a private
right of action.

In Gonzaga v. Doe, 536 U.S. 273, 282-84 (2002), the Supreme
Court clarified and tightened the test used to determine whether
federal legislation conferred individual rights that could be

16

enforced through an implied cause of action and under 42 U.S.C. § 1983.  The Court explained that in determining both whether a statutory violation could be enforced through § 1983 and whether a private right of action could be implied from a statute the court "must first determine whether Congress intended to create a federal right."  Id. at 283.  To meet that requirement, the statute must grant rights that are "'phrased in terms of the persons benefitted'" and, for purposes of an implied right of action, the statute must "manifest[] an intent 'to create not just a private right but also a private remedy.'"  Id. at 284 (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 692, n.13 (1979), and Alexander v. Sandoval, 532 U.S. 275, 286 (2001)). The Court acknowledged that some language in prior opinions, including Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) and Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 509 (1990), might have suggested a less stringent standard.

Therefore, to determine whether a federal statute confers an implied right of action, "the key inquiry is whether the statute is 'phrased in terms of the persons benefitted' 'with an unmistakable focus on the benefited class.'" City of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 62 (1st Cir. 2016) (quoting Gonzaga, 536 U.S. at 284).  In addition, courts must consider "whether the statute is worded in terms of government

17

policy and practice or individual entitlements, and whether
Congress provided alternate mechanisms for enforcing the
statute." City of Portsmouth, 813 F.3d at 62.

The plaintiffs argue that they are entitled to enforce
rights conferred in Chapter II of the URA, specifically § 4622
and § 4630.  They argue that the policy of the URA "is directed
at fair treatment of persons or businesses displaced by federal
or federally funded projects" and rely on Pou Pacheco v. Soler
Aquino, 833 F.2d 392, 400 (1st Cir. 1987), to support the claim.

Pou Pacheco, however, was decided before the Supreme Court
addressed the standard for determining whether a statute confers
an implied right of action in Gonzaga.  Contrary to the
plaintiffs' interpretation, the court in Pou Pacheco did not
follow the more stringent test required by Gonzaga.  See
Delancey v. City of Austin, 570 F.3d 590, 594 n.7 (5th Cir.
2009).  Instead of determining whether specific provisions in
Chapter II of the URA were phrased in terms of the persons
benefitted with an unmistakable focus on the benefitted class,
as is now required, the court emphasized the policy of the URA.
The court also did not examine whether Congress had provided
alternative mechanisms for enforcement.

Courts that have considered whether the URA confers an
implied right of action under the Gonzaga test have determined

that no private right of action exists.  See, e.g., Clear Sky Car Wash LLC v. City of Chesapeake, 743 F.3d 438, 443-44 (4th Cir. 2014); Delancey, 570 F.3d at 594-95; Osher v. Land Clearance for Redevelopment Auth., 2016 WL 7474990, at *2-*3 (E.D. Mo. Dec. 29, 2016) (citing cases).  More specifically, Chapter II of the URA, which includes the sections cited by the plaintiffs in their objection to the motion to dismiss, has been construed not to confer an implied right of action.[7] Clear Sky Car Wash, LLC v. City of Chesapeake, Va., 910 F. Supp. 2d 861, 875–79 (E.D. Va. 2012).  The plaintiffs cite no case decided after Gonzaga that has found an implied private right of action under the URA.

The reasoning in the cases which have decided that the URA does not confer a private right of action is persuasive.  The two statutes the plaintiffs rely on, § 4622 and § 4630, impose duties on "the head of the displacing agency" and "the head of a Federal agency" but do not focus on the persons who might be

---

[7] "The URA consists of three subchapters.  Subchapter I (§§ 4601-4605) is entitled 'General Provisions.'  Subchapter II (§§ 4621-4638) is entitled 'Uniform Relocation Assistance,' and relates to moving expenses and replacement housing for homeowners and tenants who are displaced by federal land acquisition.  Subchapter III (§§ 4651-4655), . . . is entitled 'Uniform Real Property Acquisition Policy.'" Pacific Shores Prop. Owners Ass'n v. Fed. Aviation Admin., 2014 WL 985960, at *7 (N.D. Cal. Mar. 7, 2014).

benefitted by the implementation of those duties.[8]  See Clear Sky, 910 F. Supp. 2d at 877-78.  As such, neither § 4622 nor § 4630 confers a private right of action.

In addition, other means are available to enforce the URA. A disappointed applicant for benefits must seek review from the head of the federal or state agency with authority over the project.  § 4633(b)(3).  See Clear Sky, 910 F. Supp. 2d at 882. Then, if necessary, the applicant can challenge a federal agency's final action under the URA through the Administrative Procedures Act ("APA"), which further undermines an implied right of action.  Alamo Aircraft Ltd. v. City of San Antonio, 2016 WL 5720860, at *2 (W.D. Tex. Sept. 30, 2016); Clear Sky, 910 F. Supp. 2d at 879.  The plaintiffs did not allege a claim under the APA, which they confirm in their objection to the motion to dismiss.

The NHDOT is the state agency that had authority over the project in this case.  New Hampshire provides for "equitable treatment of persons displaced as a direct result of programs or projects undertaken by a state agency."  RSA 124-A:1.  Displaced

_____

[8] As an example, in Gonzaga, the Court explained that the language in Titles VI and IX was "individually focused" because those statutes state:  "No person . . . shall . . . be subjected to discrimination," while unfocused language directs an agency to do something that will confer a benefit.  Gonzaga, 536 U.S. at 287.

persons are entitled to reasonable expenses incurred in moving, losses of "personal property as a result of moving or discontinuing a business," expenses incurred in locating a replacement property, and expenses incurred in reestablishing a business.  RSA 124-A:3.  RSA chapter 124-A also provides a process for review of benefits decisions through rule-making by the state agencies.  RSA 124-A:9.  The NHDOT has provided a review process by promulgating regulations for that purpose, but the plaintiffs did not pursue the review process.

In sum, there is no private right of action implied by the URA and, more specifically, no private right of action under § 4622 and § 4630.  As a result, the plaintiffs have not alleged claims under the URA in Counts I, II, III, VI, and VII.

V.  Takings Clause of the Fifth Amendment

The plaintiffs contend that Nashua has effected a de facto temporary taking of its equipment and machinery under the Takings Clause by failing to provide relocation assistance and benefits under the URA and by seeking to evict the plaintiffs from the building. To the extent the plaintiffs' Fifth Amendment claim is based on the URA and is simply another means of seeking a right of action under the URA, they do not state a claim.

The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without

21

just compensation.  Horne v. Dep't of Agric., 135 S. Ct. 2419,
2425-26 (2015).  A "taking" for purposes of the Fifth Amendment
includes the transfer of private property by eminent domain to
the state or to another private party.  See Stop the Beach
Renourishment, Inc. v. Fl. Dep't of Env'l Protection, 560 U.S.
702, 713 (2010).  A "taking" also may occur when the state
causes the destruction of real property, when regulation forces
a property owner to submit to occupation, when regulation
deprives a property owner of "all economically beneficial use of
his property," or when the state takes property by
"recharacteriz[ing] as public property what was previously
private property."  Id.

In this case, the plaintiffs were paid $1,210,138.76 for
their real property in 2003.  They accepted that payment and
have spent the money.  They did not challenge the compensation
as insufficient when it was paid or at any time since, until
filing this lawsuit in 2016.

Nashua decided that the plaintiffs' property was no longer
needed for the project in 2010 and then required a lease from
the plaintiffs.  The plaintiffs have not identified any
regulation that has been imposed on them which effects a
regulatory taking or any other circumstance that would qualify
as a new taking under the Fifth Amendment.

To the extent the plaintiffs argue that their compensation for the property should now include the expenses necessary to remove their equipment and machinery and to relocate their business, they are mistaken.  Just compensation for purposes of the Takings Clause "'is for the property, and not to the owner." United States v. Bodcaw Co., 440 U.S. 202, 203 (1979) (quoting Monogahela Navigation Co. v. United States, 148 U.S. 312, 326 (1893)).  For that reason, just compensation does not include "indirect costs to the property owner caused by the taking of his land," Bodcaw, 440 U.S. at 203, or "any award for consequential damages arising from a condemnation," United States v. 50 Acres of Land, 469 U.S. 24, 33 (1984).  See also United States v. Gen. Motors Corp., 323 U.S. 373, 379 (1945) (holding that just compensation does not include "future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign").

The plaintiffs have not shown that the NHDOT and Nashua were obligated under the Fifth Amendment to pay removal and relocation expenses.  Therefore, to the extent the plaintiffs claim that their equipment and machinery were "taken" in

violation of the Fifth Amendment by the NHDOT and/or Nashua because those entities have not paid for the removal and relocation expenses for the equipment and machinery, the plaintiffs have not stated a claim.

In addition, the Fifth Amendment bars only a taking of private property without just compensation.  If the state provides a means for obtaining compensation, such as through the procedures provided by RSA chapter 124-A and the NHDOT regulations, then a takings claim is not ripe until those procedures are exhausted without success.  See Perfect Puppy, Inc. v. City of E. Providence, 807 F.3d 415, 420 (1st Cir. 2015).  The plaintiffs in this case did not pursue the state remedies available to them.

The plaintiffs have not stated a claim under the Takings Clause of the Fifth Amendment.

VI.  Equal Protection Claim and § 1983 Claim Against Nashua

The plaintiffs bring a claim, Count V, alleging that Nashua violated the Equal Protection Clause of the Fourteenth Amendment.  The plaintiffs also allege a civil rights claim under § 1983, Count VI, which alleges violations of the URA, Fifth Amendment, and the Equal Protection Clause.  For the reasons stated above, the plaintiffs have not stated a right of action under the URA or a viable claim under the Takings Clause.

24

The plaintiffs Equal Protection Clause claims against Nashua, in Counts V and VII, are considered together.

In support of both of their equal protection claims, the plaintiffs allege that beginning in 2000 four other businesses whose land was taken by Nashua for the highway project were provided relocation assistance benefits while they were denied benefits.  They contend that the disparate treatment constitutes a violation of the Equal Protection Clause.

Nashua moves to dismiss the claims as time barred.  A state's statute of limitations for tort claims applies to federal civil rights claims.  Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010).  New Hampshire's statute of limitations for personal actions, including torts, is RSA 508:4, which provides that claims must be brought within three years "of the act or omission complained of."

Nashua contends that the plaintiffs' constitutional claims accrued by August 2, 2010, at the latest, when Nashua denied the plaintiffs relocation assistance.[9]  Because the plaintiffs did

---

[9] Nashua also states that the NHDOT's notice on August 2, 2010, was not necessarily a final decision by the NHDOT, which apparently refers to the plaintiffs' failure to use the administrative process to challenge the initial decision. Nevertheless, the plaintiffs were on notice that their request for relocation assistance had been denied by August of 2010.

not file suit until 2016, Nashua contends that the claims are untimely.

The plaintiffs argue that there was continuing harm because no final decision was made on paying relocation assistance benefits but cite no legal authority in support of their theory.[10]  See Petrella v. Metro-Goldwyn-Mayer, Inc., 124 S. Ct. 1962, 1969, & n.6 (2014) (describing continuing harm and separately accruing harm).  In the complaint, the plaintiffs allege nothing that occurred after 2010 that would lead them to believe the project was continuing or that Nashua would pay them relocation assistance benefits.  In 2014, Nashua offered to let the plaintiffs buy the property back.

Therefore, the plaintiffs were on notice by August of 2010 that they would not receive relocation assistance benefits from Nashua (or NHDOT).  As a result, their equal protection claims, based on Nashua's failure to pay relocation assistance benefits, accrued in 2010.  Because they did not bring suit until 2016, the claims are time-barred.

---

[10] The plaintiffs did not challenge the NHDOT decision, therefore, for purposes of the statute of limitations, the decision was final.

VII.   <u>State Law Claims</u>

In Count VIII, the plaintiffs allege a claim of "municipal estoppel" against Nashua, and in Count IX they allege unjust enrichment against Nashua.  The plaintiffs also mention claims under state law and the New Hampshire Constitution in other counts.

The federal claims that provide federal question jurisdiction in this case are dismissed.  The court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims.  28 U.S.C. § 1367(c)(3).

VIII.   <u>Preliminary Injunction</u>

The plaintiffs moved for a preliminary injunction to require Nashua to protect and not to dispose of the plaintiffs' machinery and equipment in the Pine Street property.  In light of the disposition of the claims in this case, the motion for a preliminary injunction is denied.

<u>Conclusion</u>

For the foregoing reasons, the motion to dismiss cross claims (document no. 17) filed by the NHDOT is granted.  The motions to dismiss the plaintiffs' claims filed by the NHDOT (documents no. 7), by the FHWA (document no. 22), and by Nashua (document no. 19) are granted as to the federal claims.  The

plaintiffs' motion for a preliminary injunction (document no. 26) is denied.

Counts I, II, III, IV, V, VI, and VII are dismissed.  The court declines to exercise supplemental jurisdiction over Counts VIII and IX, which are dismissed for lack of jurisdiction.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph DiClerico, Jr.
United States District Judge

March 23, 2017

cc:  Jared Joseph Bedrick, Esq.
     Steven A. Bolton, Esq.
     Mark S. Bourbeau, Esq.
     Matthew T. Broadhead, Esq.
     Stephen G. LaBonte, Esq.
     Celia K. Leonard, Esq.
     Terry L. Ollila, Esq.